**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | |
|---|---|
| ASCENSION SETON D/B/A ASCENSION SETON MEDICAL CENTER AUSTIN,<br>                                    Plaintiff,<br><br>vs.<br><br>NATIONAL LABOR RELATIONS BOARD, a federal administrative agency, JENNIFER ABRUZZO, in her official capacity as the General Counsel of the National Labor Relations Board, LAUREN M. MCFERRAN, in her official capacity as the Chairman of the National Labor Relations Board, MARVIN E. KAPLAN, GWYNNE A. WILCOX, and DAVID M. PROUTY, in their official capacities as Board Members of the National Labor Relations Board, and ELEANOR LAWS in her official capacity as an Administrative Law Judge of the National Labor Relations Board,<br>                                    Defendants. | Civil Action No.  6 : 2 4 - c v - 0 0 4 8 5 |

**PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ...................................................................................................... ii

INTRODUCTION ....................................................................................................................... 1

BACKGROUND .......................................................................................................................... 4

ARGUMENT ................................................................................................................................ 6

I.      ASMCA is likely to succeed on the merits of its constitutional claims............................... 6

A.      NLRB ALJs are unconstitutionally insulated from removal ................................................ 6

B.      The NLRB's Members are unconstitutionally insulated from removal................................. 8

C.      The NLRB's adjudication of private rights and legal relief violates the Seventh
        Amendment................................................................................................................................ 10

D.      The NLRB Members' combining of functions violates the separation of powers and due
        process...................................................................................................................................... 13

II.     ASMCA will suffer irreparable harm without a preliminary injunction ........................... 15

A.      The unconstitutionality of the NLRB proceedings inflicts irreparable harm .................... 16

B.      The unconstitutional NLRB proceedings inflict irreparable economic harm.................... 18

III.    The balance of harms and public interest favor a preliminary injunction ......................... 19

CONCLUSION .......................................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alpine Sec. Corp. v. FINRA*,

    No. 23-5129, 2023 WL 4703307 (D.C. Cir. July 5, 2023) ....................................................17

*Assoc. Builders & Contractors of Tex. Gulf Coast, Inc. v. U.S. Dep't of Energy*,
    451 F. Supp. 281 (S.D. Tex. 1978) ...........................................................................................18

*Axon Enter., Inc. v. FTC*,
    598 U.S. 175 (2023) ........................................................................................................ *passim*

*BST Holdings, L.L.C. v. OSHA*,
    17 F.4th 604 (5th Cir. 2021)....................................................................................................19

*Burgess v. FDIC*,
    639 F. Supp. 3d 732 (N.D. Tex. 2022).....................................................................................18

*Chauffeurs, Teamsters & Helpers, Loc. No. 391 v. Terry*,
    494 U.S. 558 (1990) .................................................................................................................13

*Cochran v. SEC*,
    20 F.4th 194 (5th Cir. 2021)....................................................................................................17

*Collins v. Yellen*,
    141 S. Ct. 1761 (2021) .............................................................................................................10

*Daniels Health Scis., L.L.C. v. Vascular Health Scis., L.L.C.*,
    710 F.3d 579 (5th Cir. 2013)..............................................................................................16, 20

*Deerfield Med. Ctr. v. City of Deerfield Beach*,
    661 F.2d 328 (5th Cir. 1981)...................................................................................................16

*Fortune v. Nat'l Cash Reg. Co.*
    364 N.E.2d 1251 (Mass. 1977) ...............................................................................................12

*Free Enter. Fund v. PCAOB*,
    561 U.S. 477 (2010) ........................................................................................................ *passim*

*Horne v. Polk*,
    394 P.3d 651 (Ariz. 2017) .......................................................................................................14

*Humphrey's Ex'r v. United States*,
    295 U.S. 602 (1935) .............................................................................................................9, 10

*Jarkesy v. SEC*,
    34 F.4th 446 (5th Cir. 2022) ........................................................................... *passim*

*League of Women Voters of U.S. v. Newby*,
    838 F.3d 1 (D.C. Cir. 2016) ................................................................................19

*Louisiana v. Biden*,
    55 F.4th 1017 (5th Cir. 2022) ............................................................................19

*Mertens v. Hewitt Assocs.*,
    508 U.S. 248 (1993) ............................................................................................12

*Myers v. United States*,
    272 U.S. 52 (1926) ..........................................................................................6, 10

*Nken v. Holder*,
    556 U.S. 418 (2009) ............................................................................................19

*Overstreet v. El Paso Disposal, L.P.*,
    625 F.3d 844 (5th Cir. 2010) ................................................................................9

*Petermann v. Teamsters Loc. 396*,
    344 P.2d 25 (Cal. Ct. App. 1959) .......................................................................12

*Seila Law LLC v. CFPB*,
    140 S. Ct. 2138 (2020) .................................................................................. *passim*

*Space Expl. Techs., Corp. v. Bell*,
    701 F. Supp. 3d 626, 630 (S.D. Tex. 2023) ................................................ *passim*

*Stern v. Marshall*,
    564 U.S. 462 (2011) ............................................................................................21

*Thryv, Inc.*,
    372 N.L.R.B. No. 22 (Dec. 13, 2022) ......................................................... *passim*

*Tull v. United States*,
    481 U.S. 412 (1987) ......................................................................................11, 13

*United States v. Texas*,
    599 U.S. 670 (2023) ..............................................................................................9

*Ward v. Vill. of Monroeville*,
    409 U.S. 57 (1972) ..............................................................................................18

*Westrock Servs., Inc.*,
   366 N.L.R.B. No. 157 (Aug. 6, 2018)....................................................................7

*Williams v. Pennsylvania*,
   579 U.S. 1 (2016) ........................................................................... *passim*

*Winter v. Nat. Res. Def. Council, Inc.*,
   555 U.S. 7 (2008) ....................................................................................1, 6

**Statutes**

5 U.S.C. § 1202(d) ............................................................................... 2, 7

5 U.S.C. § 7521(a)................................................................................ 2, 7

29 U.S.C. § 153(a)................................................................................*passim*

29 U.S.C. § 154 ....................................................................................9

29 U.S.C. § 159 ....................................................................................9

29 U.S.C. § 160 ....................................................................................9

29 U.S.C. § 160(c)................................................................................12, 15

29 U.S.C. § 160(e)................................................................................15

29 U.S.C. § 160(f)................................................................................15

29 U.S.C. § 160(j)................................................................................9

National Labor Relations Act......................................................................*passim*

**Other Authorities**

FED. R. CIV. P. 65(a).............................................................................1

General Counsel, *Section 10(j) Manual* (Feb. 2014), https://www.nlrb.gov/sites/
   default/files/attachments/basic-page/node-1727/MASTER%20REVISED%20
   2013%2010(J)%20MANUAL.pdf...................................................15, 16, 17

Michael J. Heilman, *The National Labor Relations Act at Fifty: Roots Revisited,*
   *Heart Rediscovered*, 23 DUQ. L. REV. 1059, 1069 (1985)........................................25

NAT'L LABOR RELATIONS BD., LEGISLATIVE HISTORY OF THE NATIONAL LABOR
   RELATIONS ACT OF 1935 (1949) ...............................................................25

U.S. CONST. amend. VII...........................................................................11

Ascension Seton d/b/a Ascension Seton Medical Center Austin ("ASMCA") respectfully requests an order enjoining, until the Court issues a final judgment in this case, administrative proceedings against ASMCA brought under the National Labor Relations Act ("NLRA"). This relief is sought against Defendants National Labor Relations Board ("NLRB"), Jennifer Abruzzo, Lauren M. McFerran, Marvin E. Kaplan, Gwynne A. Wilcox, and David M. Prouty, and Administrative Law Judge Eleanor Laws who is assigned to preside over the administrative hearing ("ALJ"). FED. R. CIV. P. 65(a). The administrative hearing is currently scheduled to begin on October 8, 2024, and without the requested relief, ASMCA will suffer irreparable harm as described below.

## INTRODUCTION

ASMCA filed this action to avoid serious and irreparable injuries that it will otherwise suffer from if subjected to an unconstitutional administrative proceeding. Defendants are currently prosecuting and presiding over such a proceeding accusing ASMCA of violating federal law and, in particular, the National Labor Relations Act ("NLRA"). Because the structure of that proceeding violates the United States Constitution under Supreme Court and Fifth Circuit precedent, ASMCA respectfully requests an order pausing the NLRB proceedings unless and until the constitutional failings are remedied.

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). ASMCA satisfies each of these requirements.

ASMCA is likely to succeed in establishing that the structure of the NLRB proceedings violates the Constitution on four different grounds:

*First*, the administrative proceeding is being adjudicated by an ALJ who is unconstitutionally exercising substantial executive functions while being insulated from "executive supervision" in violation of Article II of the Constitution. *Jarkesy v. Sec. & Exch. Comm'n,* 34 F.4th 446, 463 (5th Cir. 2022), *cert. granted*, 143 S. Ct. 2688, 216 L. Ed. 2d 1255 (2023), *and cert. denied*, 143 S. Ct. 2690, 216 L. Ed. 2d 1256 (2023), *and aff'd and remanded*, 144 S. Ct. 2117, 2127 (2024). NLRB ALJs are unconstitutionally insulated from removal in three different ways. An agency may take steps to remove an ALJ but "only for good cause established and determined by the Merit Systems Protection Board [("MSPB")]," 5 U.S.C. § 7521(a). However, creating another layer of insulation for the ALJs, the President may remove members of the MSPB itself only for "inefficiency, neglect of duty, or malfeasance in office." 5 U.S.C. § 1202(d). Finally, creating another level of insultation for the ALJs, the President may remove NLRB Members (the same individuals who select the ALJs) only "for neglect of duty or malfeasance in office, but for no other cause." 29 U.S.C. § 153(a). The Fifth Circuit held that a matching set of removal restrictions was unconstitutional as applied to ALJs of the Securities Exchange Commission ("SEC"). *Jarkesy*, 34 F.4th at 463–64.  Accordingly, the same logic applies here.

*Second*, the Members who comprise the NLRB are also unconstitutionally insulated from removal by the President. Article II requires that the President maintain "unrestricted removal power" over all federal officials "who wield executive power," subject to only two exceptions. *Seila Law, LLC v. CFPB*, 140 S. Ct. 2183, 2191–92 (2020). The potentially relevant exception here is inapplicable because the NLRB *does* wield substantial executive power. Moreover, the Fifth Circuit's reasoning in *Jarkesy* that SEC Board Members are unconstitutionally insulated from removal applies here, too. *See* 34 F.4th at 463-4.

*Third*, the NLRB proceeding violates ASMCA's Seventh Amendment jury-trial right by

adjudicating private rights outside the confines of an Article III court. The Board's General Counsel alleges that ASMCA wrongfully terminated certain employees and seeks a broad range of compensatory monetary damages for those employees. *See generally Thryv, Inc.*, 372 N.L.R.B. No. 22 (Dec. 13, 2022) (holding that the Board will provide expansive monetary compensation for wrongfully terminated employees) (vacated in part on unrelated grounds). The Board thus seeks to vindicate private rights for the benefit of private parties. But because the Constitution only permits the Board to adjudicate public rights through its non-jury, administrative proceedings, such proceedings violate the Seventh Amendment. *See Jarkesy*, 144 S. Ct. at 2124, 2131-2136.

*Fourth*, the NLRB violates the separation of powers and infringes on ASMCA's due-process rights by exercising prosecutorial, legislative, and adjudicatory authority within the same proceeding. The Supreme Court has held that "an unconstitutional potential for bias exists when the same person serves as both accuser and adjudicator in a case." *Williams v. Pennsylvania*, 579 U.S. 1, 8 (2016). Nevertheless, that is exactly what Board Members do when they authorize the General Counsel to pursue charges (a prosecutorial function) and then adjudicate and announce new legal rules during an administrative appeal of an ALJ ruling (judicial and legislative functions).

ASMCA will be irreparably harmed by these violations of its constitutional rights unless the Court preliminarily enjoins the NLRB proceedings pending a final decision on the merits. Even if the Court can cure some of these structural defects in due course through its final judgment, it cannot undo the injury ASMCA will suffer in the meantime through "subjection to an illegitimate proceeding, led by an illegitimate decisionmaker" in "proceedings [that] violate the separation of powers." *Axon Enter., Inc. v. FTC*, 598 U.S. 175, 191 (2023). Under binding Supreme Court precedent, such harm is "a here-and-now injury" that "is impossible to remedy

once the proceeding is over." *Id.* (citation omitted); *accord Space Expl. Techs., Corp. v. Bell*, 701 F. Supp. 3d 626, 631 (S.D. Tex. 2023) (Olvera, J.). Furthermore, ASMCA will suffer the practical harms resulting from an extensive administrative proceeding that distracts from its important charitable mission of caring for patients. These harms also will be irreparable even if the Court ultimately finds that the NLRB's structural flaws can be corrected prospectively. The balance of equities and public interest weigh strongly in ASMCA's favor for similar reasons. *See Id.* at 634.

Finally, granting this motion for preliminary injunction aligns with recent decisions issued by this Court and others within the Fifth Circuit. Specifically, ASMCA is similarly situated to those plaintiffs whose administrative proceedings were enjoined because the courts found a substantial likelihood of success on the merits that the NLRB ALJs and NLRB Members are unconstitutionally insulated from removal. *See Space Expl. Technologies Corp. v. Nat'l Lab. Rels. Bd.*, No. W-24-CV-00203-ADA, 2024 WL 3512082, at *3 (W.D. Tex. July 23, 2024) (ALJs and NLRB members); *Energy Transfer, LP v. Nat'l Lab. Rels. Bd.*, No. 3:24-CV-198, 2024 WL 3571494, at *1 (S.D. Tex. July 29, 2024) (ALJs); *Aunt Bertha v. Nat'l Lab. Rels. Bd.*, No. 4:24-CV-00798-P, 2024 WL 4202383, at *2-4 (N.D. Tex. Sept. 16, 2024) (ALJs).

## BACKGROUND

ASMCA is part of the Ascension health system; Ascension is a non-profit and Catholic health system, with a mission of delivering compassionate, personalized care to all with special attention to persons living in poverty and those most vulnerable.  (Bouma Decl., Exhibit A). ASMCA is an acute care, full-service hospital with 24/7 emergency care including a Comprehensive Level 1 Stroke Center and a level IV trauma center. *Id.* ASMCA delivers care for life-threatening injuries and illnesses. *Id.* ASMCA is a destination for specialty care including heart and vascular health, stroke care, lung and esophageal cancers, maternity services and women's health. *Id.* ASMCA also provides a wide range of minimally invasive procedures,

4

imaging, lab tests and rehabilitation services. *Id.*

Certain Registered Nurses ("RN") employed by ASMCA are unionized and represented by the National Nurses Organizing Committee – Texas/NNU ("NNOC"). *Decisions and Orders of the National Labor Relations Board* (N.L.R.B.), 16-RC-298670. In November and December 2022, NNOC and Riann Miller (the "Charging Parties") filed charges with the NLRB alleging that ASMCA committed unfair labor practices when it the employment of Jessica Walfort and Riann Miller (the "Charges"). Compl., ¶ 24-27. ASMCA submitted to the NLRB a total of three position statements refuting the Charging Parties' allegations, along with supporting evidence. *Id.* ¶ 29, 30, 32. On April 17, 2024, the Regional Director for Region 16 issued an order consolidating the administrative cases, with a consolidated administrative complaint and notice that an ALJ hearing would occur on October 8, 2024. *Id.* ¶ 33.

In July 2024, this Court and the Southern District of Texas granted motions for preliminary injunction enjoining NLRB administrative proceedings to continue under the basis that there is a substantial likelihood of success that, under Fifth Circuit precedent, the NLRB ALJs and Members are unconstitutionally insulated from removal. *Space Expl. Technologies Corp,* 2024 WL 3512082, at *3-4; *Energy Transfer, LP,* 2024 WL 3571494, at *1. Thereafter, in September 2024, the Northern District of Texas granted a motion for preliminary injunction enjoining NLRB administrative proceedings finding that there is a substantial likelihood of success that, under Fifth Circuit precedent, the NLRB ALJs are unconstitutionally insulated from removal. Aunt Bertha, 2024 WL 4202383, at *4.

ASMCA inquired whether the NLRB would agree to postpone its proceedings to give this Court time to adjudicate these issues. Taormina Decl. (Exhibit B), ¶ 5. The NLRB declined to agree to postpone the hearing. *Id*. ¶ 5-6. The Union also did not agree. *Id.* at 6. On Friday, September 13, 2024, the parties in the underlying administrative proceeding met with the

Administrative Law Judge, where ASMCA again suggested postponement of the administrative proceeding. *Id.* at 7-8. ASMCA intends to make this request in a formal motion to the ALJ and anticipates opposition from both the union and NLRB Regional Director. *Id.* at 9. As of this filing, the administrative proceeding has not been postponed and the hearing remains set for October 8, 2024.

**ARGUMENT**

Preliminary injunctive relief is proper when a movant establishes that (1) it is likely to succeed on the merits, (2) it is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in its favor, and (4) an injunction is in the public interest. *Winter*, 555 U.S. at 20. ASMCA satisfies all four factors.

**I.     ASMCA is likely to succeed on the merits of its constitutional claims.**

**A.     NLRB ALJs are unconstitutionally insulated from removal.**

Article II vests all executive power in the President, "who must 'take Care that the Laws be faithfully executed.'" *Seila Law*, 140 S. Ct. at 2191. The President does not execute federal law "alone and unaided." *Myers v. United States*, 272 U.S. 52, 117 (1926). The President "must execute them by the assistance of subordinates." *Id.* But because the executive responsibility remains vested in the President, the officers of every administrative agency, regardless of the level of independence, must be subject to presidential oversight. *See Free Enter. Fund v. PCAOB*, 561 U.S. 477, 513–14 (2010). As such, the Constitution requires that the President have the "power to remove—and thus supervise— those who wield executive power on his behalf." *Seila Law*, 140 S. Ct. at 2191.

ASMCA is likely to succeed on the merits of its constitutional challenge to the NLRB ALJs' removal protections; that conclusion is required by existing Fifth Circuit precedent. In *Jarkesy*, the Fifth Circuit held that an indistinguishable "statutory removal restrictions" for SEC

ALJs "are unconstitutional." 34 F.4th at 465. Under 5 U.S.C. § 7521(a), "SEC ALJs may be removed by the Commission 'only for good cause established and determined by the [MSPB] on the record after opportunity for hearing.'" 34 F.4th at 464. The Fifth Circuit also determined that SEC Commissioners and MSPB members themselves "can only be removed by the President for cause." *Id.*; *see* 5 U.S.C. § 1202(d) (MSPB members). The SEC ALJs were "sufficiently important to executing the laws that the Constitution requires that the President be able to exercise authority over their functions." *Jarkesy*, 34 F.4th at 464. But these multiple "layers of for-cause protection"—for the SEC Commissioners and the MSPB members— unconstitutionally "stand in the President's way." *Id.* at 465.

The Fifth Circuit's opinion in *Jarkesy* is dispositive and now binding precedent. *See United States v. Lopez-Velasquez*, 526 F.3d 804, 808 n.1 (5th Cir. 2008) ("Absent an intervening Supreme Court case overruling prior precedent, we remain bound to follow our precedent...") There is no relevant difference between SEC ALJs and NLRB ALJs. Both are "inferior officers" who "have substantial authority" in agency investigations and enforcement actions. *Jarkesy*, 34 F.4th at 464; *see Westrock Servs., Inc.*, 366 N.L.R.B. No. 157, slip op. at 1 (Aug. 6, 2018) ("Board judges, like SEC judges, are inferior officers[.]"). And like SEC ALJs, NLRB ALJs are covered by "at least two layers of for-cause protection" that "stand in the President's way." *Jarkesy*, 34 F.4th at 465. Further, 5 U.S.C. § 7521(a), which allows an employing agency to remove its ALJs only when the MSPB finds good cause, applies equally to both sets of ALJs; 5 U.S.C. § 1202(d) applies equally to the MSPB members in both instances, too. Additionally, the NLRA explicitly creates removal protection for Board Members: they are removable only "for neglect of duty or malfeasance in office, but for no other cause." 29 U.S.C. § 153(a). Accordingly, like the SEC ALJs, the NLRB ALJs are also unconstitutionally insulated from the President's oversight. *See Jarkesy*, 34 F.4th at 464.

In July 2024, this Court in *Space Expl. Technologies Corp.,* granted SpaceX's motion for preliminary injunction and enjoined the pending ALJ hearing scheduled regarding one or more pending unfair labor practice charges. 2024 WL 3512082, at *3. The order stated: "The Court finds that under current Fifth Circuit law, there is a substantial likelihood that SpaceX succeeds on the merits with regards to showing that the NLRB ALJs and Members are unconstitutionally protected from removal." *Id.*, at *3. That same week, the Southern District of Texas granted a motion for preliminary injunction on the same grounds. *Energy Transfer,* 2024 WL 3571494, at *1. And, on September 16, 2024, the Northern District of Texas granted a motion for preliminary injunction on the basis that the employer is likely to succeed on the merits that the NLRB's ALJs are unconstitutionally protected from removal. *Aunt Bertha,* 2024 WL 4202383, at *4. Consequently, under the Fifth Circuit's precedent, ASMCA is likely to succeed on the merits of this claim.

**B.    The NLRB's Members are unconstitutionally insulated from removal.**

The removal protections of the NLRB's Members are unconstitutional, too. Unlike the ALJs, however, the NLRB Members are not inferior officers; rather, they are *principal* officers who exercise substantial executive power in administering and enforcing the NLRA. While they are appointed by the President and confirmed by the Senate as principal officers, the President is deprived of his constitutional power to oversee their work because the President can remove them only "for neglect of duty or malfeasance in office, but for no other cause." 29 U.S.C. § 153(a). Recent Supreme Court precedent strongly suggests that this strict removal protection violates Article II of the Constitution given the substantial executive power that the Board wields.  *Axon, supra*.

As stated, removal restrictions for executive branch officials are generally unconstitutional. Nevertheless, for principal officers, the Supreme Court recognized one narrow

exception "for multimember expert agencies that do not wield substantial executive power." *Seila Law*, 140 S. Ct. at 2199–200. This exception originated in *Humphrey's Executor v. United States*, 295 U.S. 602, 628 (1935), in which the Supreme Court determined that the Commissioners of the Federal Trade Commission ("FTC") did not at the time exercise "executive power in the constitutional sense." *Id.* at 628.

That said, regardless of what may have been true of FTC Commissioners almost 90 years ago, NLRB Members exercise substantial executive power through their administrative, policymaking, and prosecutorial authority. NLRB Members enforce the NLRA in many ways such as determining appropriate units for the purpose of collective bargaining, directing representation elections, deciding unfair labor practice charges, and seeking enforcement of unfair labor practice orders in federal court. 29 U.S.C. §§ 159, 160. NLRB Members also maintain authority to appoint inferior officers including the executive secretary, attorneys, examiners, regional directors, ALJs, and others. *Id.* § 154.

More specifically, the NLRB Members' executive functions are on display in NLRA Section 10(j), which gives the NLRB essentially prosecutorial power: "[t]he Board shall have power . . . to petition [a] United States district court . . . for appropriate temporary relief or restraining order" in response to an alleged unfair labor practice. *Id.* § 160(j). As the Fifth Circuit found, this petition power "is prosecutorial in nature." *Overstreet v. El Paso Disposal, L.P.*, 625 F.3d 844, 852 (5th Cir. 2010). Further, prosecuting someone for alleged violations of federal law lies at the heart of the Constitution's concept of Executive Power. *See, e.g.*, *United States v. Texas*, 599 U.S. 670, 678–79 (2023); *Seila Law*, 140 S. Ct. at 2200.

The strictness of the NLRB Member removal protections is distinguishable from those that insulated the FTC Commissioners in 1935. The FTC Commissioners are removable "for inefficiency, neglect of duty, or malfeasance in office," *Humphrey's Ex'r*, 295 U.S. at 620

(quoting 15 U.S.C. § 41). NLRB Members, on the other hand, are removably only "for neglect of duty or malfeasance in office," but not for other causes like inefficiency, 29 U.S.C. § 153(a). And, allowing Congress to eliminate the President's ability to remove principal officers for inefficiency would be an unjustified expansion of *Humphrey's Executor*. *See Collins v. Yellen*, 141 S. Ct. 1761, 1787 (2021) ("The President must be able to remove not just officers who disobey his commands but also those he finds 'negligent and inefficient[.]'" (quoting *Myers*, 272 U.S. at 135)).

Repeatedly, the Supreme Court has declined to expand *Humphrey's Executor*. For example, in *Free Enterprise*, the Court held that *Humphrey's Executor* does not apply when inferior officers are shielded by two layers of removal protections. *Free Enter.*, 461 U.S. at 493. In *Seila Law* and *Collins*, the Court reinforced that *Humphrey's Executor* does not apply when an independent agency is led by a single director. *Seila Law*, 140 S. Ct. at 2192; *Collins*, 141 S. Ct. at 1783–84. Actually, *Humphrey's Executor* has recently been called into serious question. *See, e.g.*, *Seila Law*, 140 S. Ct. at 2198 n.2; *id.* at 2217 (Thomas, J., concurring in part and dissenting in part). Certainly, only the Supreme Court may overrule its own decisions, however, ASMCA expressly preserves the argument that *Humphrey's Executor* should be overturned, particularly given more recent precedent. *Id.* That said, the key point here is that there is no basis to expand *Humphrey's Executor* to NLRB Members, who wield greater executive power than the FTC Commissioners of 1935 but are more protected from presidential oversight.

And, as mentioned, this Court recently found that parties were entitled to a preliminary injunction because they were likely to succeed on the merits that the NLRB Members are unconstitutionally protected from removal. *Space Expl. Technologies,* 2024 WL 3512082, at *3. Accordingly, ASMCA is likely to prevail on this claim, too.

**C.    The NLRB's adjudication of private rights and legal relief violates the Seventh Amendment.**

The NLRB proceeding against ASMCA also violates the Seventh Amendment, which preserves the right to trial by jury "[i]n Suits at common law." U.S. CONST. amend. VII. The Board claims authority to award extensive compensatory damages to make employees whole for alleged violations of their legal rights. This effort to adjudicate private rights and afford legal relief without the safeguards of juries and an impartial judiciary, as Article III requires, is improper and far exceeds the constitutional bounds for administrative adjudications.

The Supreme Court recently held that the SEC could not constitutionally submit individuals to administrative adjudications where the penalty was such that it could have arise from a claim at common law. *Jarkesy*, 144 S. Ct. at 2127 ("The SEC's antifraud provisions replicate common law fraud, and it is well established that common law claims must be heard by a jury"). In this holding, the Supreme Court reaffirmed that the right to trial by jury "is a 'fundamental' component" of the American legal system and "one of our most vital barriers to governmental arbitrariness." *Jarkesy*, 34 F.4th at 452 (citation omitted). In applying the Seventh Amendment, a court must determine (1) if the action's claims arise "at common law" and, if so, (2) whether the "public rights" exception applies and thus permits Congress to assign the matter to agency adjudication without a jury trial. *Jarkesy*, 144 S. Ct. at 2127. "This analysis applies not only to common-law forms of action, but also to causes of action created by congressional enactment." *Tull v. United States*, 481 U.S. 412, 417 (1987).

The NLRB proceeding against ASMCA involves claims that arise at common law within the meaning of *Jarkesy* and *Tull*. The Board has lately taken the view that it may, and should, award broad <u>monetary</u> relief "to compensate affected employees for all direct or foreseeable pecuniary harms that these employees suffer as a result of the [employer's] unfair labor practice." *See Thryv*, 372 N.L.R.B. No. 22, slip op. at 1. This compensation includes not just backpay, *see* 29 U.S.C. § 160(c), but also such items as "interest and late fees on credit cards"

11

and other "credit card debt," "penalties" based on "early withdrawals" from a "retirement account" to cover living expenses, compensation for loss of a "car" or "home" based on an inability "to make loan or mortgage payments" or "rent," and new or increased "transportation or childcare costs," among other things. *Thryv*, 372 N.L.R.B. No. 22, slip op. at 9–10 (citation omitted). Other than backpay, these categories of monetary relief are not found in the statute. Nevertheless, the Board has purportedly authorized them to "mak[e] employees whole" and "to restore the wronged to the position he would have occupied but for the action of the wrongdoer." *Id.* at 8, 10 (citation omitted).

In following *Thryv*, the NLRB's administrative complaint against ASMCA specifies that the General Counsel seeks all relief as may be just and proper to remedy the unfair labor practices alleged. Taormina Decl., Attachment 2, p. 5. Under current Board precedent, this relief would include the newly authorized damages "to compensate [unlawfully terminated] employees for all direct or foreseeable pecuniary harms that these employees suffer as a result of" the unlawful termination. *Thryv*, 372 N.L.R.B. No. 22, slip op. at 1.

The Supreme Court has recognized that "compensatory damages," or "monetary relief for all losses . . . sustained as a result of the alleged breach of . . . duties," are "the classic form of *legal* relief." *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 255 (1993) (emphasis omitted). And an action by an employee against an employer seeking full compensation arising from an alleged wrongful discharge is akin to a proceeding seeking compensatory and consequential damages for a breach of contract or for a tort. *Cf. Fortune v. Nat'l Cash Reg. Co.* 364 N.E.2d 1251, 1257 (Mass. 1977) (treating bad-faith discharge of an at-will employee as a breach of contract); *Petermann v. Teamsters Loc. 396*, 344 P.2d 25, 27–28 (Cal. Ct. App. 1959) (recognizing cause of action for discharge in violation of public policy). Consequently, the Board's administrative proceeding against ASMCA is "more similar to cases that were tried in courts of law than to suits

tried in courts of equity or admiralty." *Tull*, 481 U.S. at 417.[1]

The public-rights doctrine does not authorize Congress to assign these claims to administrative agencies. Again, the Board's admitted purpose is "making employees whole" and remedying the private wrong. *Thryv*, 372 N.L.R.B. No. 22, slip op. at 8, 10, 12-13. In this way, the Board is explicitly aiming beyond the vindication of public rights—"the public interest in effecting federal labor policy"—and instead focusing on "the wrong done the individual employee." *Chauffeurs, Teamsters & Helpers, Loc. No. 391 v. Terry*, 494 U.S. 558, 573 (1990) (citation omitted). Moreover, denying the Board the ability to award this form of compensation would not "dismantle the statutory scheme." *Jarkesy*, 34 F.4th at 453, 455.

### D.    The NLRB Members' combining of functions violates the separation of powers and due process.

The NLRB's proceedings are structurally unconstitutional in that the NLRB's proceedings against ASMCA are the combination of both prosecutorial and adjudicative functions by the Board. For example, under the Board's procedures, the Members themselves authorize decisions to seek Section 10(j) relief,[2] but then also preside over administrative appeals from NLRB ALJs' unfair labor practice decisions involving the same subject matter. In other words, when Board Members accept, for example, a recommendation to file a Section 10(j) petition, they act both as prosecutors and adjudicators.

The Constitution does not permit the same agency officials to be both prosecutors and judges. In fact, even for *state* officials, the Supreme Court has held that "an unconstitutional potential for bias exists when the same person serves as both accuser and adjudicator in a case."

---

[1] Even if backpay were considered equitable, the other forms or relief recently authorized by the NLRB in *Thryv* and sought here are clearly compensatory and thus legal in nature.
[2] *See* Office of the General Counsel, *Section 10(j) Manual* §§ 5.2–5.5, at 13–16 (Feb. 2014), https://www.nlrb.gov/sites/default/files/attachments/basic-page/node-1727/MASTER%20 REVISED%202013%2010(J)%20MANUAL.pdf.

*Williams*, 579 U.S. at 8. In *Williams*, the Supreme Court held that a state supreme court justice violated the Fourteenth Amendment Due Process Clause by participating in postconviction review proceedings in a death-penalty case whose prosecution he had authorized decades earlier. 579 U.S. at 4–7. The Supreme Court concluded that the justice's dual prosecutorial and adjudicative roles violated "[t]he due process guarantee that 'no man can be a judge in his own case.'" *Id.* at 9. Thus, the Constitution mandated that the prior prosecutor recuse from serving as an adjudicator. *Id.* at 16.

The Arizona Supreme Court explained that this constitutional principle applies equally in the agency context. *Horne v. Polk*, 394 P.3d 651 (Ariz. 2017). In *Horne*, the court reviewed a due-process challenge to the dual roles a "Special Arizona Attorney General" performed when both prosecuting a violation of the Arizona campaign finance laws and reviewing (and rejecting in part) the ALJ's recommendation. The Arizona Supreme Court concluded that both federal and state law (including *Williams*) directed "that due process does not allow the same person to serve as an accuser, advocate, and final decisionmaker in an agency adjudication." *Id.* at 659. While "[t]he agency head may supervise personnel involved in such functions . . . if she makes the final agency decision, she must be isolated from advocacy functions and strategic prosecutorial [decision-making] and must supervise personnel involved in those functions in an arms-length fashion." *Id*. Thus, because the Special Arizona Attorney General "assumed an advocacy role during the ALJ proceedings," the court concluded that "the due process guarantee prohibited her from then serving as the final adjudicator" on appeal. *Id.*

The NLRB's Section 10(j) proceeding is illustrative of this issue. Those proceedings seek preliminary injunctive relief, and the decision also rests on whether the alleged violations threaten "irreparable harm" to the Board or the Charging Parties. *Section 10(j) Manual*, *supra*, §§ 4.0, 5.2.1, at 10, 13. So, NLRB Members who grant their approval to request Section 10(j)

relief express their assessment that (1) the subject of the enforcement proceeding is likely to lose on the merits of the case and (2) the NLRB's interests outweigh the subject's interests.

The lack of neutrality is evident. By design, the NLRB's Section 10(j) approval process relies primarily on the presentation in the "Go 10(j)" memorandum prepared by one side (the NLRB inferior officers who wish to litigate the alleged statutory violations). This memorandum provides the administrators' views regarding "the relevant facts and legal arguments and authorities establishing the violations," the NLRB officials' "responses to defenses raised by the [charged party]," and the administrators' "responses [to the charged party's] arguments against 10(j)" relief. *Section 10(j) Manual*, *supra*, § 5.2.1, at 13. Even after relying on this one-sided presentation of the facts and law as their primary basis for authorizing Section 10(j) proceedings, the same NLRB Members often judge whether the same charged parties have engaged in the alleged unfair labor practices, and issue findings of fact, orders, and remedies that are then subject to deferential judicial review. 29 U.S.C. § 160(c), (e)–(f).

Then, alleging in a federal court filing, on behalf of the NLRB itself, that a specific party has likely violated the NLRA in ways that cause irreparable harm to the Board or third parties, there is a substantial risk that such NLRB Members will be "psychologically wedded" to that position when they adjudicate the administrative complaint. *Williams*, 579 U.S. at 9 (citation omitted). If, in the meantime, the agency's request for Section 10(j) relief has succeeded, then that risk is even greater. For Board Members might "be influenced by an improper, if inadvertent, motive to validate and preserve the result obtained through the adversary process" in federal court. *Id.* at 2. The Constitution cannot allow adjudicative proceedings that are tainted in this way, so ASMCA is substantially likely to succeed on this claim.

## II.     ASMCA will suffer irreparable harm without a preliminary injunction.

ASMCA also meets the second requirement for a preliminary injunction: irreparable

harm. Without preliminary injunctive relief from this Court, ASMCA will be required to undergo an unconstitutional proceeding before an insufficiently accountable agency official, without the jury it is entitled to, and without the basic due process of an unbiased decisionmaker consistent with the separation of powers. These constitutional injuries would not be remediable after the administrative process. Unless this Court grants a preliminary injunction blocking the NLRB proceedings, ASMCA will suffer "harm for which there is no adequate remedy at law." *Daniels Health Scis., L.L.C. v. Vascular Health Scis., L.L.C.*, 710 F.3d 579, 585 (5th Cir. 2013).

A.      **The unconstitutionality of the NLRB proceedings inflicts irreparable harm.**

Generally, deprivations of constitutional rights are irreparable injuries, as this Court has recognized. *Space Expl. Techs., Corp. v. Bell*, 701 F. Supp. 3d 626, 634 (S.D. Tex. 2023) ("Deprivation of a constitutional right unquestionably constitutes irreparable injury." (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). Other authorities are in accord. *See, e.g.*, *Deerfield Med. Ctr. v. City of Deerfield Beach*, 661 F.2d 328, 338 (5th Cir. 1981) (denial of constitutional rights "for even minimal periods of time constitutes irreparable injury").

Moreover, the Supreme Court has held that a party that is subject to a proceeding before a decisionmaker who is unconstitutionally insulated from presidential oversight suffers irreparable harm. *Axon*, 598 U.S. at 191. Specifically, the Court recognized that "being subjected to unconstitutional agency authority . . . by an unaccountable ALJ . . . is a here-and-now injury" that is "impossible to remedy once the proceeding is over." *Id*. An appellate court "could of course vacate the [agency]'s order," but a "separation-of-powers claim" challenging unconstitutional removal protections "is not about that order." *Id*. Such a claim "is about subjection to an illegitimate proceeding, led by an illegitimate decisionmaker." *Id.* And once the proceeding has concluded, a court is unable to remedy that harm: "[a] proceeding that has already happened cannot be undone," and so "[j]udicial review . . . would come too late to be

meaningful." *Id*. at 191–92. This reasoning is directly applicable to both of ASMCA's removal-protection claims.

The Supreme Court has made clear that a challenge to an agency's "power to proceed at all" differs from a challenge to "action[s] [already] taken in the agency proceedings." *Axon*, 598 U.S. at 192. Being subjected "to an illegitimate proceeding, led by an illegitimate decisionmaker," again, is a constitutional injury that "cannot be undone" after the fact. *Id*. at 191; *see also Cochran v. SEC*, 20 F.4th 194, 212-213 (5th Cir. 2021), *aff'd and remanded sub nom.*, *Axon*, 598 U.S. 175 (if removal claim is "meritorious," plaintiff should not be "forc[ed] to litigate before an ALJ who is unconstitutionally insulated from presidential control"); *Space Expl. Technologies Corp. v. Nat'l Lab. Rels. Bd.*, No. W-24-CV-00203-ADA, 2024 WL 3512082, at *3 (W.D. Tex. July 23, 2024) (finding an injunction of an administrative adjudication pending appeal appropriate based on *Axon* because the plaintiff was likely to prevail on claim that, if the proceedings were to happen, then it would be subjected to the authority of the unaccountable NLRB Members); *Energy Transfer, LP v. Nat'l Lab. Rels. Bd.*, No. 3:24-CV-198, 2024 WL 3571494, at *1 (S.D. Tex. July 29, 2024) (finding an injunction of an NLRB administrative proceeding pending appeal appropriate based on *Axon* because the plaintiff was likely to prevail on claim that the ALJs are unconstitutionally protected from removal under Fifth Circuit precent); *Aunt Bertha v. Nat'l Lab. Rels. Bd.*, No. 4:24-CV-00798-P, 2024 WL 4202383, at *4 (N.D. Tex. Sept. 16, 2024) ("[T]he Court concludes that [movant] has shown a likelihood of success on the merits for its claim that the removal protections afforded to the NLRB ALJs are unconstitutional"); *Alpine Sec. Corp. v. FINRA*, No. 23- 5129, 2023 WL 4703307, at *3 (D.C. Cir. July 5, 2023) (Walker, J., concurring) (finding an injunction of an administrative adjudication pending appeal appropriate based on *Axon* because the plaintiff was likely to prevail on claim that officers were unlawfully "shielded from

removal").

Furthermore, the deprivation of ASMCA's right to a jury during the NLRB proceedings will also create irreparable harm. Specifically, because ASMCA is "entitled under the Seventh Amendment to a jury trial, the irreparable injury requirement is automatically satisfied without the need to consider Plaintiff's particular showings." *Burgess v. FDIC*, 639 F. Supp. 3d 732, 749 (N.D. Tex. 2022). Having to proceed without a jury outside an Article III court cannot be remedied after the proceeding has run its course just like with having to proceed before unaccountable executive officials. *Cf. Ward v. Vill. of Monroeville*, 409 U.S. 57, 61–62 (1972) (A flawed adjudicative process cannot "be deemed constitutionally acceptable simply because the State eventually offers a defendant an impartial adjudication. Petitioner is entitled to a neutral and detached judge in the first instance.").

And, more broadly, being "deprived of procedural due process . . . is in itself irreparable injury." *Assoc. Builders & Contractors of Tex. Gulf Coast, Inc. v. U.S. Dep't of Energy*, 451 F. Supp. 281, 286 (S.D. Tex. 1978). In short, each constitutional injury poses irreparable harm.

## B.    The unconstitutional NLRB proceedings inflict irreparable economic harm.

While the unconstitutional nature of the proceeding itself establishes irreparable harm, the real-world implications of that proceeding also constitute additional irreparable harm. Further, as shown in the Declaration of Kathy Bouma, preparation for the hearing will require the time and attention of not only her, but many other personnel, including for example members of the Associate Relations team, and managers who were involved in the events leading up to the employee terminations. (Bouma Decl.). Additional members of the ASMCA team are likely to participate in the hearing as witnesses and senior business leaders would be called to testify in these matters. *Id.* The employee time required for preparation and participation in the hearing will impose major burdens on ASMCA's resources and will distract its personnel from the

everyday work of the organization. *Id.* Further, the administrative proceedings are likely to impact ASMCA's business reputation and goodwill. *Id.* The accusations by the Board and its prosecutors falsely brand ASMCA as a violator of federal labor law. *Id.* The federal government often uses these financial and reputational harms to its advantage. *Cf. Axon*, 598 U.S. at 216 (Gorsuch, J., concurring) ("Aware, too, that few can outlast or outspend the federal government, agencies sometimes use this as leverage to extract settlement terms they could not lawfully obtain any other way."). Yet, there is no way to recover the lost time, money, or talent caused by the proceedings, even if ASMCA ultimately gets an administrative rehearing that avoids the constitutional defects identified above. Without a stay of these proceedings until the Court can award a constitutionally adequate remedy, ASMCA will suffer concrete harm that will not be recoverable.

## III.    The balance of harms and public interest favor a preliminary injunction.

ASMCA also satisfies the two remaining preliminary injunctive factors. "Where the government is a defendant, the balance of harms and the public interest factors merge." *Space Expl. Technologies Corp. v. NLRB*, at *7 (citing *Nken v. Holder*, 556 U.S. 418, 435, 129 S.Ct. 1749, 173 L.Ed.2d 550 (2009)). Both factors lean strongly in favor of ASMCA. Given its likelihood of success on the merits, an injunction would not harm Defendants since the government suffers no cognizable harm from stopping "the perpetuation of unlawful agency action." *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016); *see also, e.g.*, *BST Holdings, L.L.C. v. OSHA*, 17 F.4th 604, 618 (5th Cir. 2021). Nor would an injunction "disserve the public interest." *Louisiana v. Biden*, 55 F.4th 1017, 1022 (5ᵗʰ Cir. 2022); *see also Daniels Health Scis.*, 710 F.3d at 585 ("[T]he public is served when the law is followed."). In particular, it is not in the public interest to have an increasingly expansive Executive Branch that nonetheless "slip[s] from the Executive's control, and thus from that of the people," *Free Enter.*, 561 U.S. at 499, or

that infringes the constitutional imperative that "the judiciary remain[] truly distinct from . . . the executive," *Stern v. Marshall*, 564 U.S. at 483 (2011) (alteration in original) (internal citation omitted). And even if the Court grants the injunction but ultimately determines the proceedings are constitutional (or remedies the constitutional defects), Defendants could then proceed with the NLRB proceedings at that time. A brief delay would not result in any meaningful harm.

## CONCLUSION

For all these reasons, ASMCA respectfully requests that this Honorable Court grant a preliminary injunction and enjoin the administrative proceedings against ASMCA until the Court issues a final judgment in this case.

Dated: September 18, 2024                    Respectfully submitted,

/s/ James Robert Ray, III
James R. Ray, III
State Bar No. 24079746
MUNSCH HARDT KOPF & HARR, P.C.
1717 West 6th Street, Suite 250
Austin, Texas 78703-4777
Telephone: (512) 391-6100
Facsimile: (512) 391-6149
jray@munsch.com

Jonathon A. Rabin (Michigan Bar No. P57145)
HALL, RENDER, KILLIAN, HEATH & LYMAN, P.C.
* *Pro Hac Vice* Admission Pending
Attorneys for Plaintiff
101 W. Big Beaver Rd., Suite 745
Troy, MI 48084
(248) 457-7835
Fax: (248) 740-7501
jrabin@hallrender.com

4854-4601-7766v4